IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| HOLLICE E. BETH OBERST, an individual, | Case No. 6:23-CV-01556-MC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COUNTY OF LANE, | |
| Defendant. | |

MCSHANE, Judge:

Plaintiff alleges that her employer, Defendant Lane County, violated Title VII and the First Amendment by terminating her employment after she refused to get the COVID-19 vaccine or take weekly COVID tests. Before the Court is Defendant's Motion for Summary Judgment. ECF No. 14. For the reasons discussed below, Defendant's Motion is GRANTED.

**BACKGROUND**

Plaintiff's Christian faith prevents her from taking "vaccines tested with or including aborted baby fetal cells[.]" Oberst Decl. 4, ECF No. 20. The parties do not dispute that this is a firmly held religious belief.

Plaintiff worked as a Waste Management fee collector for Defendant Lane County from 2008 to 2022. Plaintiff served "hundreds of customers per week," measured garbage loads, and

1 – Opinion & Order

calculated and collected fees. *Id.* at 2. Plaintiff's "employment record reflected satisfactory performance" and all employee reviews "were very positive." *Id.*; McBride Decl. 3, ECF No. 15. Plaintiff sincerely loved her job.

On September 15, 2021, the County adopted a COVID-19 vaccination requirement to protect its employees and the community from the disease. The policy required that all employees be vaccinated by November 30, 2021 or seek a medical or religious exception.

On November 1, 2021, Plaintiff delivered a letter to Defendant stating that she was seeking a religious accommodation under Title VII to except her from the vaccine requirement. Defendant approved Plaintiff's accommodation request, but Plaintiff never returned the form indicating that she accepted the offered accommodation. The accommodation required unvaccinated employees to wear a mask while at work, test weekly for COVID-19, and share their test results with the County. The County provided employees with several weeks of testing supplies, including saliva containers. Employees would collect their saliva in the container and drop the container in one of several locked drop boxes at various County buildings. A County employee would collect the samples each week and deliver them to the University of Oregon for testing. The employee would then receive a text message or email with the test results and forward that message to Lane County Human Resources to be recorded.

Plaintiff engaged in a series of emails with her supervisor, Shellia Mace, and the County's Talent Manager, Ryan McBride, about the vaccine requirement and accommodations. Mace and McBride answered Plaintiff's questions, and Mace expressed that she "underst[ood] and empathize[d] with the feelings and turmoil that come with the current situation." Mace Decl. Ex. A, at 2, ECF No. 16. Plaintiff did not object to wearing a mask while at work, but questioned the legality of the vaccine mandate and testing requirements. McBride informed Plaintiff that if she

was "unwilling to complete the risk mitigation measures (masking and testing) associated with [Plaintiff's] approved religious exception then [she] would be subject to layoff[.]" McBride Decl. Ex. C, at 4.

On January 20, 2022, Defendant notified Plaintiff that because she "indicated [she] [would] not participate in the required protocols for those with exceptions, including weekly testing, wearing specific masks, etc.," she was being laid off. McBride Decl. Ex. D, at 1. Six days later, the County terminated Plaintiff's employment.

Plaintiff brings four claims against Lane County: first, for failure to accommodate under Title VII, 42 U.S.C. § 2000e-2; second, for retaliation under Title VII, 42 U.S.C. § 2000e-2; third, for violation of Plaintiff's First Amendment right to free speech; and fourth, for retaliation in violation of the First Amendment. Defendant moves for summary judgment on all claims.

## **STANDARD**

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court reviews evidence and draws inferences in the light most favorable to the nonmoving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (citation omitted). When the moving party has met its burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted) (emphasis in original). An issue is "genuine" if a reasonable jury could find in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citation omitted). A fact is "material" if it could affect the outcome of the case. *Id.*

**DISCUSSION**

**I.      Title VII Claims**

Title VII makes it illegal for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a)(1). "Religion" is defined to "include[] all aspects of religious observance and practice, as well as belief[.]" 42 U.S.C. § 2000e(j). An employer must "reasonably accommodate" employees' religion unless doing so would cause "undue hardship on the conduct of the employer's business." *Id.*

Plaintiff first alleges that Defendant discriminated against her and failed to reasonably accommodate her religious belief. Second, she alleges that Defendant terminated her in retaliation against her religion.

**a.  Discrimination & Failure to Accommodate**

Plaintiff alleges that Defendant "subjected Plaintiff to discriminatory treatment by threatening to and then terminating her employment if she did not receive the COVID-19 vaccine or accept an unreasonable accommodation." Compl. 7. She also alleges that the "proposed accommodation of weekly testing was unreasonable due to its potential to expose Plaintiff's private medical information to persons who could target her for harassment and other mistreatment because of her unvaccinated status." *Id.*

To establish religious discrimination based on a failure-to-accommodate theory, Plaintiff must show a prima facie case that "(1) [she] had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) [she] informed [her] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." *Peterson v. Hewlett-*

*Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to show that it made good faith efforts to reasonably accommodate Plaintiff's religious practices or that it could not do so without undue hardship. *Id.*

Plaintiff cannot establish a prima facie case. There is no dispute that Plaintiff had a bona fide religious belief that kept her from getting the COVID-19 vaccine, or that she informed Defendant of the conflict between her religion and the vaccine. But the record demonstrates that Defendant accommodated Plaintiff's religious needs by allowing her to wear masks and take weekly COVID tests instead of getting the vaccine. Once Defendant excepted Plaintiff from the vaccine requirement, Plaintiff did not have a bona fide religious belief that conflicted with an employment duty. Plaintiff did not inform Defendant of any *religious* conflict with the masking and testing requirements. Plaintiff took issue with that accommodation on purely secular grounds, citing privacy concerns. Oberst Decl. 7.

Further, there is no evidence that Defendant terminated Plaintiff's employment because of her religious conflict. Rather, all evidence on this point shows that Defendant terminated Plaintiff because of her secular refusal to take COVID tests. *See, e.g.*, Compl. Ex. D (separation letter informing Plaintiff she was being laid off because she "indicated [she] [would] not participate in the required protocols for those with exceptions" to the vaccination requirement).

Title VII does not forbid an employer from terminating an employee for failure to comply with job duties that the employee objects to on a purely secular basis. *See Tiano v. Dillard Dept. Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998) (Title VII does not protect medical, economic, political, or social preferences). There is no dispute that Defendant granted Plaintiff's religious exception and offered an accommodation that resolved Plaintiff's religious conflict. The Title VII inquiry ends there. *See, e.g.*, *Breshears v. Or. Dep't of Transp.*, No. 22-cv-01015, 2023 WL

136550, at *3 (D. Or. Jan. 9, 2023) (holding plaintiff failed to state a prima facie case where he was granted an accommodation of masking and did not allege a religious conflict with masking); *Burcham v. City of L.A.*, 562 F. Supp. 3d 694, 708 (C.D. Cal. 2022) (same, where plaintiffs did not allege their religious exemptions were denied); *George v. Grossmont Cuyamaca Comm. Coll. Dist. Bd. of Governors*, No. 22-cv-0424, 2022 WL 16722357, at *18 (S.D. Cal. Nov. 4, 2022) (same); *Schmidt v. Disney Parks, Experiences and Prods., Inc.*, 721 F. Supp. 3d 1314, 1325 (M.D. Fla. Feb. 29, 2024) (same, where plaintiff did not allege a religious conflict with masking and testing); *Jackson v. Amazon.com, Inc.*, No. 23-cv-7759, 2024 WL 4989237, at *4 (E.D.N.Y. Dec. 5, 2024) (same).

As to the requisite causal link, it is true that "in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity," but "timing alone will not show causation in all cases[.]" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). Here, Defendant terminated Plaintiff's employment about three months after she informed Defendant of her need for a religious accommodation. Although that fact could create an inference that Plaintiff's request motivated her termination, every other piece of evidence on this point refutes that inference. In other cases where courts have inferred causation based on timing, additional circumstantial evidence suggested discriminatory motive. *See, e.g.*, *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) (inferring causation based on timing where plaintiff's performance objectives were reduced, job title was changed, her supervisor "became distant and communicated less with her" and "made comments demeaning her participation," plaintiff lost out on bonuses and sales opportunities, and "she was consistently regarded as well-qualified for promotion into upper management," but for the first time after her complaints, was told to take a lower position); *Miller v. Fairchild Indus.*,

*Inc.*, 885 F.2d 498, 505–06 (9th Cir. 1989) (same, where employer did not follow same procedure as with other employees to prevent layoffs, and plaintiff's manager "told her she should not be surprised that she was discharged after" engaging in protected activity).

By contrast, Plaintiff here cannot point to a single comment by any County employee that indicates discrimination based on her need for a religious exception. Rather, all evidence supports Defendant's contention that it granted and would have accommodated Plaintiff's exception, and only terminated Plaintiff because of her secular refusal to take COVID tests.

To evidence animus, Plaintiff must put forth evidence of concrete derogatory or discriminatory remarks from a decisionmaker. *See, e.g.*, *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (finding no direct evidence of animus where discriminatory remarks were attributed to a non-decisionmaker); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988) ("Although courts should use summary procedures judiciously when intent is an issue, purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment.") (citations omitted).

In that pursuit, Plaintiff provides video evidence of a meeting ran by County Manager Dan Hurley, where Plaintiff asserts Hurley made intimidating statements. Oberst Decl. Ex. B. First, Hurley stated that "you [employees] need to . . . be fully vaccinated by November 30th if you want to continue working here at Lane County. And I hope you all do. . . . I would hate to see for any of you to leave our organization because of this." Videotape: Waste Management Meeting by Dan Hurley (Hollice Oberst 2021), Oberst Decl. Ex. B., at 01:53, ECF No. 20 ("WM Meeting Video"). Plaintiff claims this "statement sounded like there was no option but to be vaccinated to remain employed." Oberst Decl. 5. Second, Hurley stated that "[the County's] goal is that everyone would be vaccinated but we're required to have vaccinations for religious and ADA because of those two

federal laws." WM Meeting Video 07:17. Plaintiff believes Hurley meant to say "exemptions" instead of "vaccinations," and says this statement "was intimidating" because Hurley "sounded disappointed that all employees could not be forced to be vaccinated[.]" Oberst Decl. 5. Third, Hurley stated that "most of the religious accommodations are being accepted, because we don't want to get into 200 different lawsuits is mainly the reason." WM Meeting Video 07:28. Plaintiff argues that statement suggests "the reason Lane County acquiesced to medical or faith accommodations is fear of lawsuits," not because it intended to protect its employees' religious, constitutional, or medical rights. Oberst Decl. 5.

The Court acknowledges that the statements identified by Plaintiff reflect Hurley's or the County's preference that County employees be vaccinated, and that a reasonable listener could understand the statements to mean the County was granting accommodations to avoid legal consequences. But nothing in those statements or any others in the record would allow a jury to find that the County was hostile to or planned to terminate religious people for seeking accommodations. *See Hittle v. City of Stockton, Cal.*, 101 F.4th 1000, 1014 (9th Cir. 2024) ("In short, because [plaintiff's managers] did not use derogatory terms to express their own views, or focus on the religious aspect of [plaintiff's] misconduct to express their own animus, but rather referenced other legitimate constitutional and business concerns, their terminology does not give rise to a genuine issue of discriminatory animus.").

Other evidence demonstrates that Defendant's communications with Plaintiff were kind and even sympathetic, which supports Defendant's claim that it held no religious animus toward Plaintiff. *See, e.g.*, McBride Decl. Ex. C, at 4 (McBride answering Plaintiff's questions and offering to discuss further); *id.* at 5 (McBride stating "I hear you and understand this must be an incredibly stressful time for you and your family"); Mace Decl. Ex. A, at 2 (Mace stating that she

and another employee "both understand and empathize with [Plaintiff's] feelings and turmoil").

As an aside, the Court acknowledges that an employer could attempt to side-step Title VII liability by offering a purported accommodation that is so burdensome as to evidence discrimination. That did not happen here. The accommodation—asking Plaintiff to wear masks, take COVID tests, and share her test results—was not discriminatory, and as discussed below, was reasonable. *See, e.g.*, *Schmidt v. City of Pasadena*, No. LA CV21-08769, 2023 WL 4291440, at *8 (C.D. Cal. Mar. 8, 2023) ("Plaintiff has not cited any legal authority that requiring [masking and testing] constitutes discriminatory treatment under Title VII.") (citations omitted); *Norris v. Honeywell Int'l, Inc.*, No 22-cv-1675, 2023 WL 6256183, at *15 (M.D. Fla. Sept. 26, 2023) ("Although Plaintiffs may disagree with the [masking, testing, and social distancing] conditions and find them uncomfortable, they have not demonstrated that they rise to the severe level necessary to constitute adverse employment actions for the purpose of a Title VII religious discrimination claim.") (applying Eleventh Circuit law).

Discrimination exists where "an employer chose the particular policy because of its effect on members of a protected class." *Forsberg*, 840 F.2d at 1418. The evidence reflects that Defendant enacted its policy to protect the health and safety of its business and community, and that all employees who sought an exception were granted the same accommodation regardless of their religion. McBride Decl. 2; *see Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 71 (1986) (noting that offering different accommodations for religious and non-religious purposes "would display a discrimination against religious practices"). Defendant also offers evidence that it granted *all* religious exceptions sought by approximately 70 County employees and that none of those who accepted the accommodation were laid off or terminated. McBride Decl. 3.

Plaintiff correctly notes that the County "held unvaccinated employees to different

standards" by subjecting them to the masking and testing requirements. Plaintiff also alleges that she "experienced hostile comments about unvaccinated persons from both customers at work and from a certain Lane County employee." Oberst Decl. 6. It is undisputed that the County treated unvaccinated employees differently than vaccinated employees. Title VII only prohibits different treatment based on religion and other protected characteristics; vaccinated status is not one of them. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 71 (1977) (noting that "*similarly situated* employees are not to be treated differently *solely because* they differ with respect to race, color, religion, sex, or national origin") (emphasis added); *see also Bowlin v. Bd. of Dirs. of Judah Christian Sch.*, 695 F. Supp. 3d 1003, 1009 (C.D. Ill. 2023) ("Simply stated, Plaintiffs cannot request an accommodation and then complain they are being treated differently than others due to the requested accommodation."). Plaintiff needed to show that she, as a religious unvaccinated person, was treated differently than non-religious unvaccinated people. *See Hittle*, 101 F.4th at 1012 ("A plaintiff may demonstrate an inference of discrimination through comparison to similarly situated individuals[.]") (internal quotations, alterations, citation omitted). Despite having the opportunity to depose Defendant's employees and discover information relating to her termination, Plaintiff cannot offer any evidence to show that she was treated differently based on her religion.

Finally, even if Plaintiff proved a prima facie case, no reasonable jury could find that the accommodations were unreasonable.

As a preliminary matter, while the testing requirements may have offended Plaintiff's personal notions of privacy, they were not unlawful. Courts have upheld the mandatory disclosure of relevant medical information where necessary to protect public health. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 602 (1977) ("Nevertheless, disclosures of private medical information to . . . public health agencies are often an essential part of modern medical practice . . . Requiring such

disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy."); *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 903 (7th Cir. 2018) (noting that employers may require employees to undergo medical examination when "used to determine a worker's ability to perform work functions safely"); *United States v. Kravetz*, 706 F.3d 47, 64 (1st Cir. 2013) ("The privacy interest in medical information is neither fundamental nor absolute.").

As to the reasonableness of the testing accommodations, the rule in the Ninth Circuit is that

> [Title VII] requires an employer to accommodate the religious beliefs of an employee in a manner which will reasonably preserve the employee's employment status, i.e., compensation, terms, conditions, or privileges of employment. . . . Where an employer proposes an accommodation which effectively eliminates the religious conflict faced by a particular employee, however, the inquiry under Title VII reduces to whether the accommodation reasonably preserves the affected employee's employment status. . . . If the proposed accommodation reasonably preserves that status, the employer has satisfied its obligation under Title VII.

*Am. Postal Workers Union, S.F. Local v. Postmaster Gen.*, 781 F.2d 772, 776–77 (9th Cir. 1986).

Here, there is no dispute that the accommodation preserved Plaintiff's employment status. McBride Decl. 2. Plaintiff would have continued to work the same hours in the same role for the same pay. The only difference would be that she would wear a mask at work, which she did not object to, drop a saliva sample at one of several drop boxes in the area, and forward her test results to the County once a week. Courts have regularly upheld such requirements as reasonable accommodations. *See, e.g.*, *Bowlin*, 695 F. Supp. 3d at 1008 (regular COVID testing); *Jackson*, 2024 WL 4989237, at *5 (masking, social distancing, and weekly testing); *Feds for Med. Freedom v. Garland*, No. 23-cv-1817, 2024 WL 1859958, at *7 (S.D. Tex. Apr. 29, 2024) (masking, social distancing, and regular testing); *Reichert v. Infusion Partners, L.L.C.*, No. 22-5450, 2023 WL 4685377, at *5 (E.D. La. July 21, 2023) (regular testing).

11 – Opinion & Order

Title VII required only that Defendant accommodate Plaintiff's religious conflict and preserve her employment status, both of which Defendant indisputably did. *See Ansonia*, 479 U.S. at 68 ("We find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation. . . . Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end."). Defendant is entitled to summary judgment on this claim.

### b. Retaliation

Next, Plaintiff alleges that Defendant retaliated against her for her religious abstention from the vaccine. Plaintiff must prove a prima facie case of retaliation by showing that: "(1) she engaged in an activity protected under Title VII; (2) her employer subjected her to adverse employment action; [and] (3) there was a causal link between the protected activity and the employer's action." *Fairchild Indus.*, 797 F.2d at 731 (citations omitted). Plaintiff must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for her firing and that but for such activity she would not have been fired." *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986). If Plaintiff demonstrates a prima facie case, the burden shifts to Defendant "to articulate a legitimate, non-retaliatory explanation for the action." *Id.* The burden then shifts back to Plaintiff "to show that the defendant's proffered explanation is merely a pretext for discrimination." *Id.*

The question before the Court is whether Plaintiff's protected activity of seeking a religious accommodation was a motivating factor in Defendant's decision to terminate Plaintiff's job. As discussed above, Plaintiff fails to establish a prima facie case because she cannot prove causation. Even assuming Plaintiff did so, however, Defendant meets its burden of naming a legitimate explanation for Plaintiff's termination with evidence that it terminated Plaintiff because of her

refusal to comply with the testing accommodation. McBride Decl. Ex. D, at 1. There is also evidence that Defendant continued to employ others who received religious exceptions without incident and would have done the same for Plaintiff.

Plaintiff cannot demonstrate that Defendant's proffered explanation is pretextual, so Plaintiff's retaliation claim also fails here. Plaintiff states that Defendant was motivated by animus but cannot offer any evidence beyond her own word. Plaintiff cannot point to anything that suggests her termination was motivated by anything other than her refusal to take weekly COVID tests, which was based on secular reasoning, not religious belief. Defendants are entitled to summary judgment on Plaintiff's retaliation claim. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (Plaintiff "must proffer 'specific' and 'substantial' evidence of pretext" to survive summary judgment) (citations omitted).

## II.     First Amendment Claims

Plaintiff also alleges that Defendant is liable under 42 U.S.C. § 1983 for freedom of speech and retaliation violations of the First Amendment.

### a.     First Amendment Freedom of Speech

Plaintiff alleges that Defendant violated her First Amendment right to freedom of speech by requiring weekly COVID-19 testing, which would "compel Plaintiff to share her private medical information . . . without providing her assurances that such information would not be needlessly exposed to those who could potentially target her for harassment[.]" Compl. 11.

"Expressive" conduct may sometimes be considered speech that is protected by the First Amendment. Just as the government cannot compel speech, it cannot compel expressive conduct. Conduct is expressive if it (1) intends to convey a message, and (2) is very likely to be understood

by observers as conveying the message. *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (burning the American flag was expressive conduct subject to First Amendment protections).

Plaintiff contends that the intent of the testing requirement was to compel County employees to state "I'm unvaccinated." *See* Pl.'s Answering Br. in Opp'n to Def.'s Mot. Summ. J. 28, ECF No. 19. However, Plaintiff does not demonstrate that the intent was anything other than that stated by Defendant: "to safeguard the health of our employees and their families; our customers and visitors; and the community at large[.]" McBride Decl. Ex. A. Plaintiff also contends that Defendant compelled Plaintiff to publicly convey sensitive medical information, namely, that she was unvaccinated. But Plaintiff has failed to demonstrate that depositing a container in a designated box is likely to be understood by observers as conveying any particular message. There is no evidence that members of the public were aware of the purpose of these drop boxes or that they were used only by unvaccinated people. There is no evidence that even County employees familiar with the boxes would know anything other than that Plaintiff was testing for COVID-19, an unremarkable procedure during the COVID pandemic.

Further, the requirement that Plaintiff drop off a saliva sample and forward her test results to prove she was not infected with a contagious disease at work was a valid regulation of conduct that only incidentally affected Plaintiff's speech. In *Rumsfeld*, the Supreme Court upheld a law that required similar conduct, sending emails, because that requirement was "plainly incidental to the . . . regulation of conduct." *Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 62 (2006) (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.")); *Penna v. N. Clackamas Sch. Dist.*, No. 22-cv-01417, 2023 WL

6003834, at *5 (D. Or. Aug. 11, 2023) ("Likewise, speech related to vaccination status and test results is plainly incidental to carrying out [the government employer's] vaccination policy."). Here, the County proscribed the conduct of attending work without a COVID vaccine or a recent negative COVID test. Requiring Plaintiff to drop off her saliva sample and send her test results to her employer were "plainly incidental" to the valid regulation of her workplace conduct.

Plaintiff can cite to no law or facts that suggest the County's testing requirement violates the First Amendment. Summary judgment is appropriate on this claim.

### b. First Amendment Retaliation

Plaintiff also alleges a First Amendment retaliation claim. Plaintiff must show that "(1) [s]he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity[,] and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006).

Plaintiff alleges that she "engaged in protected activity by asserting her right not to have her private medical information concerning her unvaccinated status exposed to those who could potentially target her for mistreatment." Compl. 11. As discussed above, there is no legal basis to support Plaintiff's claim that refusing to drop her saliva sample in a dropbox and share her test results with her employer is a constitutionally protected activity. Also as discussed above, Plaintiff was not terminated because of her protected activity of invoking her religious freedom, and objecting to an employment practice for secular reasons is not a protected activity.

Summary judgment is granted as to this claim.

### CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment, ECF No. 14, is GRANTED.

IT IS SO ORDERED.

DATED this 28th day of January 2025.

                                            ___s/Michael J. McShane_____
                                                   Michael J. McShane
                                             United States District Judge